## Hoskins et al. v. Helton et al.

(Decided June 22, 1937.)

MARTIN T. KELLY, JAMES S. GOLDEN and CHARLES A. JOHNSON for appellant.

N. R. PATTERSON for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Reversing.

James S. Helton was elected to the office of sheriff of Bell county for a four-year term beginning on the

first Monday of January, 1926. He duly qualified and executed bond, which was renewed from time to time as required by law. In December, 1930, certain taxpayers instituted this equitable action against Helton and his sureties to recover county and school taxes collected by him during his term of office and for which it was alleged he had not accounted, including some tax bills for 1925 which had been turned over to him by the outgoing sheriff.

From a judgment and order sustaining a special demurrer to and dismissing the taxpayer's petition, an appeal was prosecuted to this court, and in an opinion reported in 252 Ky. 616, 67 S. W. (2d) 975, it was held that the taxpayer might maintain the action, and the judgment was therefore reversed. A recitation of the facts and circumstances out of which the litigation grew and all of the proceedings had prior to the first appeal will be found in that opinion. By reference to it we are saved the necessity of an extended statement or further reference to the matters discussed therein except in so far as may be necessary in a discussion of questions to be disposed of on this appeal.

After evidence was heard it was finally adjudged that the plaintiffs recover of James S. Helton the sum of $790.91, representing the amount allowed to him by the fiscal court for services rendered in delivering ballot boxes and as commissions for other services, which allowances he admitted are not authorized by law. It was further adjudged that the petition in so far as it sought further recovery against the sheriff or his sureties be dismissed, and the taxpayers are again appealing.

As appears from the record, the county board of education employed a local accountant to make an audit of the tax books, sheriff's records, etc., to determine the amount of county school taxes the sheriff had collected and for which he had not properly accounted, and the fiscal court employed a reputable firm from Louisville to make an audit of the county affairs and the sheriff's accounts for the years 1926-1929, inclusive. The original audits made by these accountants are found in the record, the first containing 151 typewritten pages and the latter containing about 350 typewritten pages. There is also in the record a report by the commissioner to whom the case was referred. Concerning the status of the sheriff's accounts as respecting common school reve-

nues, the audits are not in accord and the commissioner's findings do not agree with either of them. In view of the manner in which the affairs of the county, the county board of education, and the sheriff were conducted and the records kept, it is not to be wondered that there were discrepancies in the audits. About the time it became known that the school board would have an audit made, the assessor's or the tax commissioner's books from which tax bills are made were so mutilated and partially destroyed as to render them practically useless in determining charges against the sheriff, and by the time the evidence was heard by the commissioner to whom the case was referred, the tax bills and the duplicate stubs remaining in the books turned over to the sheriff by the county clerk were in such condition according to the evidence, that it was impossible to ascertain from them definite and reliable information concerning the charges against the sheriff. Some had been mutilated, some removed, and on others there were markings and erasures. When the county clerk delivered the tax bills to the sheriff, he had failed to take the receipts from him as required by law and which would have disclosed the amount due the various funds as shown by the tax bills; or if the receipts were taken they also had been lost or destroyed. The sheriff did not make a settlement for any of the years or at any time during his term of office, however, in justice to the sheriff we should say, as is stipulated by the parties, he did insist on the school board making a settlement with him and threatened legal action to compel a settlement.

The sheriff is required by law to keep a cashbook showing the sums collected from each taxpayer and the amount thereof due the various funds, but according to the evidence of Mr. Helton this duty was left to one of his subordinates and the record was improperly kept or purposely falsified as he later learned.

This record reveals a deplorable indifference and neglect upon the part of officials charged with duties respecting the fiscal affairs of the county that cannot be justified or explained. The local auditor who was employed by the county school board stated in his report and audit that he arrived at the charges against the sheriff by taking the amount of each tax bill for the various years and totaling them, and that he checked this with the tax commissioner or auditor's certification of taxes to be collected by the sheriff, and that he also had

access to the sheriff's cashbook. The auditors from Louisville employed by the fiscal court stated in their audit that they made up their charges against the sheriff from the certification by the tax commission, the tax bills, the sheriff's cashbooks, records of omitted tax lists, etc. After the audits had been made, the sheriff made settlements which were in practical agreement with the audit made for the fiscal court and he admitted in his answer that he owed large sums for some years as shown by his settlement. He later withdrew the allegations of his answer in that particular and attempted to make other settlements found in the record showing that he had accounted for all taxes collected and in fact had overpaid the school board in the sum of about $3,-000. He testified that in making his settlement he relied on the accuracy of the audit made for the fiscal court and upon his cashbooks kept by a subordinate in his office, but he later learned that they were incorrect, and the second settlements were made to conform to the facts as revealed by the records in the office of the state tax commission and the state auditor and records available in the county. As indicated by the evidence, the sheriff has accounted for all moneys collected on tax bills for the year 1925 turned over to him by a former sheriff. Appellants by stipulation have withdrawn all claims for county taxes for the years 1926 and 1927, so only county taxes for the years 1928 and 1929 and school taxes for the years 1926-1929, inclusive, are involved.

A consideration of the record as a whole leaves little escape from the conclusion that the sheriff has not fully accounted for all county revenue collected for the years 1928 and 1929, but it is apparent that if the actual balance could with certainty be ascertained it would not be any considerable amount. According to the audit made by the firm of accountants employed by the fiscal court, the balance due the county school fund for the four years is over $10,000, and the audit made by the local accountant shows a considerably larger balance due, but the latter did not take into account payments made on April 11, and May 19, 1931, aggregating $13,-000, and he also charged the sheriff with considerable sums by way of interest and penalties. Notwithstanding the confused state of the evidence, it leaves the impression that with the exception of 1926 the sheriff has not accounted for all school funds that came into his

hands. In 1926 there was an overpayment of something less than $100. Notwithstanding this impression gained from the evidence, it is impossible to determine with any reasonable degree of accuracy or certainty the exact amount due or even to approximate it for any of the county or county school taxes except the school taxes. for the year 1928. One of the commissioners appointed two men, one of whom was the auditor employed by the school board to go over the sheriff's records, and according to their evidence they totaled the school revenues collected by the sheriff for that year as shown by tax bills and found the amount to be over $40,000 and approximately the amount with which the local accountant had charged him for that year; but this was considerable more than the amount with which he had charged himself in his last settlements. While it is shown that some of the duplicates of the original tax bills had been removed before these witnesses examined the records, there is evidence to show the name of the taxpayer and the amount of the tax bills that had been removed. The evidence of these witnesses who checked and totaled the tax bills for 1928 is positive and direct and furnishes a basis for a finding against the sheriff for that year. While their evidence would indicate that the sheriff owed a balance to the school fund of from $4,500 to $5,000, it is shown that he was entitled to some credits by way of exemptions, delinquents, etc., which were not taken into account in the audits. Taking into account all these claimed credits and giving the sheriff the benefit of every doubt, we unhesitatingly conclude that the balance due the county school fund for the year 1928 was at least $4,000.

Wherefore the judgment is reversed, with directions to enter judgment for the sum of $4,000 against appellees in addition to the sum heretofore adjudged against the sheriff.